## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54435-1-II |
| Respondent, | |
| v. | |
| DUSTEN JAMES OWENS, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — One afternoon in January 2019, Dustin Owens fled from an officer attempting to make a traffic stop, accelerating away from the officer at a high speed. During the chase, the officer noticed a backpack fly out of the car Owens was driving. Eventually, Owens stopped his car, and the officer arrested him and his passenger. The backpack was recovered, and the officer discovered it contained methamphetamine and a gun. Owens confessed to buying the gun and selling methamphetamine. The backpack contained nothing to identify its owner. During a bench trial, the State argued that Owens constructively possessed the backpack. The court convicted Owens of possession of methamphetamine with intent to deliver, possession of a firearm, attempting to elude a police vehicle, and bail jumping.

During sentencing, the trial court calculated Owens's offender score and added a felony point for a prior conviction for unlawful possession of a controlled substance. The court also added a point because Owens was on community custody for the unlawful possession of a controlled substance conviction at the time he committed his current offenses. The trial court appended Owens's criminal history statement to its judgment and sentence.

Owens appeals, arguing that the evidence was insufficient to establish the corpus delicti of his possession of the methamphetamine and the gun and the intent element of his intent to deliver methamphetamine charge. He also argues his counsel was ineffective for failing to impeach a witness. Finally, Owens requests resentencing due to the court's erroneous calculation of his offender score.

We affirm Owens's convictions and conclude his counsel was not ineffective. We also hold that under *Blake*,[1] the trial court's calculation of Owens's offender score is incorrect. Because Owens's standard range would be unchanged, and he was sentenced to the low end of his standard range, we do not order resentencing, but instead remand to the trial court to correct his criminal history statement.

FACTS

The State charged Owens with unlawful possession of a controlled substance with intent to deliver—methamphetamine, unlawful possession of a firearm in the first degree, attempting to elude a pursuing police vehicle, and bail jumping. The charges arose from the trial testimony and evidence set out here in relevant part.

An officer pulled Owens over after seeing him turn his car without using a signal. The officer activated his lights and siren, and Owens accelerated his car and fled. During the ensuing chase, Owens sharply turned right down a street, and the officer saw a backpack fly out of the car's passenger side window. The pursuing officer notified dispatch of the backpack, which was later recovered by another officer. After approximately two minutes, Owens stopped his vehicle and surrendered to the officer.

---

[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

The officer removed the passenger from the car, searched her, and found a small plastic baggie in her sweatshirt pocket containing a white, crystalline substance. The officer weighed the bag, which came in at five grams with packaging. The other officer who retrieved the backpack took it to the location of the stop and showed the contents to the first officer.

The officer testified that the backpack contained a black gun holster, a handgun, a gun magazine, ammunition, keys, and a "large quantity of [a] white crystalline substance." 2 Report of Proceedings (RP) at 198. The officer determined that there were three baggies containing a crystalline substance, weighing one ounce each. The backpack did not contain any identifying materials. The gun was not registered to Owens, and it had not been reported stolen.

The officer removed Owens from the car and read him his *Miranda*[2] rights. Post *Miranda*, and absent questioning, Owens stated that the baggy found on the passenger contained methamphetamine and belonged to him. He added that he gave the passenger the methamphetamine to hide it. When the officer questioned Owens about the backpack, he denied any knowledge of it.

A gang taskforce officer also responded to the scene, and separately questioned Owens. The officer asked Owens how much he had paid for the gun, and Owens answered that he had paid $150 for it. He also asked Owens if he was dealing methamphetamine; Owens answered that he was. The officer did not ask Owens about the drugs in the backpack.

A narcotics detective testified that methamphetamine is usually sold in amounts of an ounce or more, and that drug dealers normally carry a firearm. The State introduced evidence that Owens was arrested several years prior while driving the same car that he was driving in this incident.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

A forensic scientist who analyzed the contents of the baggies in the backpack also testified. The scientist stated that she tested the baggie found on Owens's passenger and one of the plastic bags from the backpack. The baggie recovered from the passenger weighed 3.6 grams without packaging and tested positive for methamphetamine. Consistent with the officer's testimony, the scientist testified that one baggie from the backpack weighed approximately one ounce and tested positive for methamphetamine. The scientist explained that she only tested one of the bags found in the backpack because all three baggies were grouped together and appeared to contain the same substance. Other testimony at trial established that the three baggies were contained together in a larger bag, each weighed a similar amount, each was a similarly sized baggie, and their contents appeared to be the same substance

In its closing argument, the State argued that Owens constructively possessed the backpack because he had dominion and control over the car's interior and was able to exert actual control by grabbing the backpack. The State also argued that, while Owens did not own the car, he was arrested while driving the same car a few years before this case. The State argued that this showed that Owens had dominion and control over the car.

Prior to trial, the State moved to exclude potential impeachment evidence against one of the officers who questioned Owens. The evidence involved the officer's testimony in a prior case. The trial court in the prior case determined the officer had provided inconsistent testimony, and that the officer had lacked probable cause to search a suspect incident to arrest. The court in this case denied the State's motion to exclude the potential impeachment evidence and stated it would allow an inquiry into the prior court's finding. The court reminded Owens that if he did impeach the State's witness, the State would be able to provide rehabilitation evidence.

54435-1-II

The trial court found Owens guilty of unlawful possession of a controlled substance with intent to deliver—methamphetamine, unlawful possession of a firearm in the first degree, and attempting to elude a pursuing police vehicle. The court acquitted Owens on bail jumping. The court issued two factual findings relevant here, both of which are mislabeled as conclusion of law IV.

The first conclusion of law IV states:

> During the pursuit, [the pursuing officer] saw a gray/black backpack come flying out of the vehicle passenger side window. The backpack was recovered by [a backup officer] in the exact location where [the pursuing officer] saw it come out of the window and within three minutes of [the pursuing officer] reporting it and broadcasting the location. The backpack contained a firearm and 3 separately packaged baggies of methamphetamine each weighing approximately one ounce.

Clerk's Papers (CP) at 136.

The second conclusion of law IV states:

> During the commission of the crime of Unlawful Possession of a Controlled Substance with Intent to Deliver (Methamphetamine) defendant was armed with a .45 caliber handgun. The handgun was located in the same backpack as the three separately packaged baggies of methamphetamine each weighing approximately one ounce and was readily available and easily accessible for offensive or defensive purposes.

CP at 137.

At sentencing, the State provided the court with Owens's criminal history. The statement of criminal history included a conviction for unlawful possession of a controlled substance. Owens was serving a term of community custody for the unlawful possession of a controlled substance conviction when he committed the current offenses. That resulted in an additional point being added to his offender score under RCW 9.94A.525(19).[3] The trial court calculated Owens's

---

[3] RCW 9.94A.525(19) states, "If the present conviction is for an offense committed while the offender was under community custody, add one point."

5

offender score as 14, or 9+,[4] for the purposes of establishing the standard range sentence for his charges according to the sentencing grid at RCW 9.94A.510. With an offender score above 9, Owens's standard range for his sentence was 220-240 months. The trial court sentenced Owens to 220 months, the low end.

Owens appeals his unlawful possession of a controlled substance with intent to deliver—methamphetamine, and unlawful possession of a firearm in the first degree charges. He also appeals the calculation of his offender score and requests resentencing.

ANALYSIS

Owens challenges both his possession of methamphetamine with intent to deliver conviction and his unlawful possession of a firearm conviction on the basis that there was insufficient evidence to prove that he constructively possessed the backpack in which those items were found. Furthermore, he contends that the State could not rely on his statements to prove that he constructively possessed the backpack because the State did not establish the corpus delicti of either crime such that his statements could be admitted into evidence.

Owens additionally challenges his possession of methamphetamine with intent to deliver conviction on the basis that the State presented insufficient evidence that all three of the baggies, which contained a crystalline substance, found in the backpack contained methamphetamine. Thus, he contends, the evidence is insufficient to establish that he had the intent to deliver the methamphetamine.

---

[4] The trial court also listed Owens's offender score on the judgment and sentence order as "9+." While the standard range is the same for scores 9 and above, it is proper to list the actual score for reasons made evident by this opinion.

We hold that the evidence is sufficient to establish Owens's constructive possession of the backpack even without the admission of his statements. Thus, we need not separately analyze his corpus delicti argument. We further hold that the evidence is sufficient to establish Owens's intent to deliver the methamphetamine. Finally, we hold that the trial court erred by including a felony point for a prior possession of a controlled substance conviction, and by including a felony point for being on community custody arising from the unlawful possession of a controlled substance conviction, at the time he committed the current offenses.

## I. CONSTRUCTIVE POSSESSION

To determine whether the evidence is sufficient to support a conviction, we consider whether any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges their conviction based on the sufficiency of the evidence, the defendant admits the truth of the State's evidence, and we must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the State. *Id*. at 265-66. Circumstantial evidence and direct evidence are considered equally reliable. *Id*. at 266. We will not review the finder of fact's credibility determinations. *Id*.

Possession may be actual or constructive. *State v. Listoe*, 15 Wn. App. 2d 308, 326, 475 P.3d 534 (2020). Actual possession requires a defendant to have physical custody of an item. *Id*. By contrast, constructive possession must be proven by showing a defendant had dominion and control over an item. *Id*. Constructive possession need not be exclusive possession, and multiple people may have dominion and control over the same item. *Id*.

7

We consider the totality of the circumstances to determine whether a defendant had dominion and control over an item. *Id.* Whether a person could readily exert actual possession over an item and a person's physical proximity to the item are circumstances that show constructive possession. *Id*. at 327. "Factors supporting dominion and control include ownership of the item and, in some circumstances, ownership of the premises. But, having dominion and control over the premises containing the item does not, by itself, prove constructive possession." *State v. Davis*, 182 Wn.2d 222, 234, 340 P.3d 820 (2014).

When findings of fact on a bench trial are challenged, we review the trial court's findings of fact to determine whether they are supported by substantial evidence in the record and, if so, whether the conclusions of law are supported by those findings of fact. *State v. Pratt*, 11 Wn. App. 2d 450, 457, 454 P.3d 875 (2019). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *Id*.

Owens argues that nothing connects him to the backpack containing the gun and the methamphetamine except his confession and the State's theory of constructive possession. Owens attacks the State's constructive possession theory by arguing that a reasonable inference supports the conclusion that both he and his passenger had the same level of dominion and control over the car's interior. According to Owens, because his possession was not exclusive there is an equal inference that Owens did not possess the backpack and was therefore innocent.

But as we stated above, our inquiry is not whether there is an interpretation of the evidence that may support Owens's theory, but rather whether there is sufficient evidence supporting the court's findings. We conclude the evidence is sufficient here. Moreover, Owens's argument misunderstands constructive possession. It is true that both Owens and his passenger had dominion and control of the interior of the vehicle, and both constructively possessed the backpack. But

constructive possession need not be exclusive possession. *Listoe*, 15 Wn. App. 2d at 326. Owens's conduct, therefore, supports an inference that he constructively possessed the backpack, even if he did not do so exclusively. Owens's maneuvering the vehicle in an apparent attempt to elude the police and dispose of the backpack, in light of his previously driving the same car, strongly implies he possessed the backpack and knew what it contained. We conclude that the State submitted sufficient evidence to prove that Owens constructively possessed the backpack in which the gun and methamphetamine were found. Owens's argument fails.

II.     EVIDENCE OF INTENT TO DELIVER

Owens next argues that the evidence does not support the trial court's factual findings that he possessed multiple baggies of methamphetamine and therefore its conclusion that he had the intent to deliver methamphetamine is not supported by substantial evidence. We disagree.

Owens challenges parts of two mislabeled conclusions of law IV,[5] arguing the court erroneously stated three baggies of methamphetamine were recovered when only one baggie tested positively as methamphetamine. Thus, he argues, the State only proved that he possessed one baggie of methamphetamine and this is insufficient to prove that he had the intent to deliver. We disagree, and hold that the trial court's finding that Owens possessed three baggies of methamphetamine is supported by substantial evidence.

---

[5] "'If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact.'" *Goodeill v. Madison Real Estate*, 191 Wn. App. 88, 99, 362 P.3d 302 (2015) (quoting *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978)). Conclusions of law IV in this matter contain a summary of the police pursuit and lists the contents of the backpack, this information would be considered findings of fact. *See Id*.

When error is assigned to a specific factual finding by the trial court, we review the challenged findings to determine whether they are supported by substantial evidence in the record and, if so, whether the trial court's conclusions of law are supported by the challenged findings of fact. *Pratt*, 11 Wn. App. 2d at 457. "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth." *Id*.

"The statutory elements of possession of [a] controlled substance with intent to deliver are (1) unlawful possession of (2) a controlled substance with (3) intent to deliver." *State v. Goodman*, 150 Wn.2d 774, 782, 83 P.3d 410 (2004). A large amount of a controlled substance is not necessary for the State to prove intent to deliver. *Id*. at 782-83 ("[I]t has never been suggested by any court that a large amount of a controlled substance is required to convict a person of intent to deliver.").

Owens challenges two of the trial court's findings of fact. The first challenged finding states:

> During the pursuit, [the pursuing officer] saw a gray/black backpack come flying out of the vehicle passenger side window. The backpack was recovered by [a backup officer] in the exact location where [the pursuing officer] saw it come out of the window and within three minutes of [the pursuing officer] reporting it and broadcasting the location. *The backpack contained a firearm and 3 separately packaged baggies of methamphetamine each weighing approximately one ounce.*

CP at 136 (emphasis added).

The second challenged finding states:

> During the commission of the crime of Unlawful Possession of a Controlled Substance with Intent to Deliver (Methamphetamine) defendant was armed with a .45 caliber handgun. The handgun was located in the same backpack as *the three separately packaged baggies of methamphetamine each weighing approximately one ounce* and was readily available and easily accessible for offensive or defensive purposes.

CP at 137 (emphasis added).

As to these challenged findings, Owens specifically objects to the trial court's finding that there were three separately packaged baggies of methamphetamine. Owens argues that because the State only tested one of the baggies containing crystalline substance, all three were not proved to be methamphetamine. Owens contends that at most, the State proved that he possessed only one baggie of methamphetamine, and that possession of a single baggie of methamphetamine is insufficient to prove the intent to deliver element of his possession with intent to deliver charge.

We reject Owens's contentions. First, we conclude that the trial court's finding of fact that all three baggies contained methamphetamine is supported by substantial evidence. The State tested one of three baggies containing a white crystalline substance, and the baggie tested positive for methamphetamine. The three baggies were contained together in a larger bag, each weighed a similar amount, and each was a similarly sized baggie. Their contents appeared to be the same substance. Such evidence is enough to convince a reasonable person that all three baggies contained methamphetamine, and therefore the trial court's finding is supported by substantial evidence.

Moreover, even if there had been only one baggie of methamphetamine, the evidence would be sufficient to satisfy the intent to deliver element of his charge. Owens acknowledges that intent to deliver may be inferred from possession of methamphetamine in combination with other facts that suggest such an intent. But he argues that a single baggie of methamphetamine weighing one ounce is insufficient to establish intent to deliver, because the amount may be for personal use. But there was ample evidence that the amount supports the intent element.

The narcotic detective's testimony at trial unequivocally established that possession of methamphetamine in a one ounce quantity combined with possession of a firearm suggests possession of methamphetamine with intent to deliver. The State produced evidence that a baggie

filled with methamphetamine, weighing approximately one ounce, and a firearm were recovered from the backpack. The trial court's finding is supported by substantial evidence and its conclusion that Owens had the intent to deliver flows from its finding. Accordingly, we affirm.

III.    ASSISTANCE OF COUNSEL

Defendants have a constitutional right to effective assistance of counsel. *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 688, 363 P.3d 577 (2015). The defendant that challenges the effectiveness of their counsel must show (1) that their "'counsel's performance fell below an objective standard of reasonableness,'" and (2) that he was prejudiced by such performance. *Id*. (quoting *State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010)). The defendant must establish prejudice by demonstrating that within a reasonable probability that, but for counsel's errors, the trial would have resulted in a different outcome. *Id*. We engage in a "strong presumption" that counsel's performance was reasonable. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). We do not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Owens argues that his counsel was ineffective for failing to impeach an officer during his testimony. We disagree.

Owens fails to establish that his counsel's performance fell below an objective standard of reasonableness. He claims that his counsel should have impeached the officer who testified about Owens's confession because the court relied on the testimony in its ruling. Owens further argues that there was no tactical reason for failing to impeach. However, during a hearing on the impeachment issue, the court reminded Owens's counsel that if he impeached the officer the State could offer evidence to rehabilitate him. Owens's counsel may have decided against impeachment because he knew the State would inevitably rehabilitate the officer by introducing evidence of his

commendations and other accolades. Owens's counsel's decision is not objectively unreasonable, so Owens's ineffective assistance of counsel claim fails.

IV.     OFFENDER SCORE CALCULATION

Owens argues that he is entitled to resentencing because the trial court erroneously included a felony point for his prior conviction for possession of a controlled substance— methamphetamine, which is now void under *Blake*. Owens also argues that the court erroneously included a point for his being subject to community custody at the time of his commission of the current offenses. That point derived from his now void possession of a controlled substance conviction. We hold that the trial court erred in including a felony point for a void conviction and in including a felony point for a void term of community custody.

A.     *Blake* Point

RCW 9.94A.525 empowers a trial court to calculate a defendant's offender score by examining their criminal history and assigning a score based on the type of prior offense. The highest possible score that impacts a sentence is 9 or higher. RCW 9.94A.510.

When calculating an offender score, the trial court may not consider "a conviction based on an unconstitutional statute." *State v. LaBounty*, 17 Wn. App. 2d 576, 581-82, 487 P.3d 221 (2021). In *State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021), our Supreme Court ruled that unlawful possession under former RCW 69.50.4013(1) was unconstitutional and convictions based on the statute were void.[6] Therefore, a prior unlawful possession conviction, which has now been

---

[6] Indeed, "[i]f a statute is unconstitutional, it is and has always been a legal nullity." *State ex. rel Evans v. Bhd. of Friends*, 41 Wn.2d 133, 143, 247 P.2d 787 (1952).

voided, cannot be used to calculate a defendant's offender score. *See LaBounty*, 17 Wn. App. 2d at 581-82. Inclusion of a point for Owens's now void unlawful possession conviction was erroneous.

B. Community Custody Point.

In addition to points calculated under RCW 9.94A.525, a defendant's offender score calculation is increased by one point under RCW 9.94A.525(19) when they commit a crime while on community custody. We are presented with the question of whether this "community custody point" still applies when the community custody term arises from a void conviction.

The State asks us to interpret RCW 9.94A.525(19) so that it operates to add a point even if the community custody arises from a void conviction. To support its argument the State references authority examining whether a defendant must comply with a trial court's contempt order when such order is erroneous or unconstitutional. *See e.g. Walker v. City of Birmingham*, 388 U.S. 307, 317, 320-21, 87 S. Ct. 1824, 18 L. Ed. 2d 1210 (1967) (party's remedy is to challenge court order not to disregard or violate the order); *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wn.2d 278, 280, 534 P.2d 561 (1975) (examining whether a trial court's invalid contempt order must be followed); *State v. Noah*, 103 Wn. App. 29, 46, 9 P.3d 858 (2000) (examining when a defendant may collaterally attack a contempt order).

But Division One of this court recently disapproved of inclusion of a community custody point arising from a void conviction. *State v. French*, ___ Wn. App. ___, 508 P.3d 1036, 1038 (2022). The *French* court also rejected the very same contempt analogy that the State argues here.

*Id.* We agree with the reasoning in *French* and hold that inclusion of the community custody point in Owens's offender score was erroneous.[7]

We typically only remand for resentencing due to an inaccurate offender score when either the standard range of the challenged sentence would have been lower had the score been accurate, or when, even if the standard range remains the same, the trial court could have imposed a lower sentence than the one it imposed and we cannot know the impact of the inclusion of the improper convictions on the trial court's ultimate decision as to the sentence. *State v. Kyllo*, No. 55176-4-II (Wash. Ct. App. Feb. 1, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2055176-4-II%20Unpublished%20Opinion.pdf; *State v. Weekly*, No. 53583-1-II (Wash. Ct. App. Feb. 23, 2022) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2053583-1-II%20Unpublished%20Opinion.pdf, *review denied*, No. 100771-0, 2022 WL 2719518 (2022).[8]

*Kyllo*, while unpublished, is instructive. In that case, Kyllo's criminal history included a conviction for unlawful possession of a controlled substance in violation of former RCW 69.50.4013(1) that was included in his offender score, but had been rendered void pursuant to *Blake*, 197 Wn.2d 170. Slip op. at 1. This court explained that removing this conviction from

---

[7] While we recognize the difference between void and voidable judgments, we refrain from engaging in that discussion here.

[8] In *Weekly*, we explained "[o]ur cases have been inconsistent in determining when a reduced offender score warrants resentencing. This court has explained that "a reduced standard range, not a reduced offender score, requires resentencing on remand." Slip op. at 14 (*State v. Kilgore*, 141 Wn. App. 817, 824, 172 P.3d 373 (2007) (emphasis omitted) (footnote omitted)). But in *State v. McCorkle*, the State failed to prove comparable foreign convictions, resulting in a miscalculation of the offender score that did not affect the standard range. 88 Wn. App. 485, 499-500, 945 P.2d 736 (1997). We held the error was not harmless because "the record does not clearly indicate that the sentencing court would have imposed the same sentence without the [unproved] prior convictions and the resultant change in offender score." *Id.*

Kyllo's offender score would still result in an offender score higher than 9, but that "we cannot presume that the trial court may not choose to impose a lower sentence within the standard range given the lower offender score." *Kyllo*, slip op. at 3. We remanded *Kyllo* for resentencing. Slip op. at 4. But in *Weekly*, we explained that "we also consider whether the defendant was sentenced at the bottom of the standard range. If the trial court imposed a low-end sentence and a reduction of the offender score could not result in a lower sentence within the standard range, then resentencing would not be necessary." Slip op. at 15.

Here, Owens was sentenced at the low end of the standard range, making resentencing unnecessary. Instead, we remand only for correction of Owens's criminal history statement appended to his judgment and sentence. We do so because the State is allowed to utilize a prior criminal history statement that a trial court relied on in sentencing as proof of criminal history in a later sentencing. *See State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999) (stating that transcripts of prior proceedings may be used as evidence to support the State's burden of proving criminal history by a preponderance of the evidence), *superseded by statute on other grounds*, LAWS OF 2008, ch. 231, § 4, *as recognized in State v. Cobos*, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014).

IV.    STATEMENT OF ADDITIONAL GROUNDS

Owens argues that four additional grounds warrant reversal of his convictions. The additional grounds one through three address his bail jumping charge. Owens's fourth additional ground claims his trial counsel was ineffective for: failing to object to his bail jumping charge; failing to issue a material witness warrant for his passenger and his Department of Corrections officer; failing to object to the detective's testimony that established the intent element of his

possession of methamphetamine with intent to deliver charge; and failing to move to suppress evidence from an illegal *Terry*[9] stop.

Owens's bail jumping arguments are moot because the trial court acquitted him of that charge. Accordingly, we refuse to address his first, second, and third grounds. For the same reason, we refuse to address Owens's argument that his counsel was ineffective for failing to object to the bail jumping charge.

Owens does not provide argument supporting his assertion that his counsel's failure to issue material witness warrants was deficient or prejudicial. Owens also fails to provide argument supporting his assertion that his counsel should have objected to the detective's testimony. Owens's *Terry* stop argument fails because his traffic stop was not a *Terry* stop; rather he was stopped after failing to signal while turning. Concerning these assertions of ineffective assistance of counsel, Owens fails to satisfy his burden. *See Khan*, 184 Wn.2d at 688. Assertions given passing treatment, or that are unsupported by argument, will not be considered. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## CONCLUSION

We affirm Owens's convictions and conclude his counsel was not ineffective. We also hold that under *Blake*, Owens's offender score as determined by the trial court is incorrect. Because Owens's standard range would be unchanged, we do not order resentencing, but instead remand to the trial court to correct his criminal history statement.

---

[9] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

54435-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

I concur:

_____
Cruser, A.C.J.

18

PRICE, J. (concurring) — I agree with the majority's result and most of its well-reasoned opinion. I write separately, however, to disagree with the majority's position on resentencing when the defendant's offender score changes as a result of an appeal, but the standard range remains the same.

Citing two recent unreported decisions, *State v. Weekly*, No. 53583-1-II (Wash. Ct. App. Feb. 23, 2022) (unpublished)[10], *review denied*, ___ Wn.2d ___ (2022) and *State v. Kyllo*, No. 55176-4-II (Wash. Ct. App. Feb. 1, 2022) (unpublished)[11], the majority states:

> We typically only remand for resentencing due to an inaccurate offender score when either the standard range of the challenged sentence would have been lower had the score been accurate, *or when, even if the standard range remains the same, the trial court could have imposed a lower sentence than the one it imposed and we cannot know the impact of the inclusion of the improper convictions on the trial court's ultimate decision as to the sentence.*

Majority at 15 (emphasis added). Although I concede that *Weekly*'s holding supports the majority, that case also acknowledged that our opinions have been inconsistent on this issue.[12] No. 53583-1-II, slip op. at 14-15. And *Kyllo*'s support for this point is somewhat weakened because, in that case, resentencing was conceded by the State. No. 55176-4-II slip op. at 2.

---

[10] https://www.courts.wa.gov/opinions/pdf/D2%2053583-1-II%20Unpublished%20Opinion.pdf.

[11] https://www.courts.wa.gov/opinions/pdf/D2%2055176-4-II%20Unpublished%20Opinion.pdf.

[12] The *Weekly* court stated:

> Our cases have been inconsistent in determining when a reduced offender score warrants resentencing. This court has explained that "a reduced standard range, not a reduced offender score, requires resentencing on remand." *State v. Kilgore*, 141 Wn. App. 817, 824, 172 P.3d 373 (2007) (emphasis omitted) (footnote omitted). But in *State v. McCorkle*, the State failed to prove comparable foreign convictions, resulting in a miscalculation of the offender score that did not affect the standard range. 88 Wn. App. 485, 499-500, 945 P.2d 736 (1997). We held the error was not harmless because "the record does not clearly indicate that the sentencing court would have imposed the same sentence without the [unproved prior convictions] and the resultant change in offender score." *Id*.

No. 53583-1-II, slip op. at 14-15 (alteration in original).

54435-1-II

Fundamentally, I do not agree with the majority's premise that resentencing should be freely ordered any time an offender score changes on appeal and we "cannot know the impact" on the trial court's ultimate sentencing decision. Majority at 15. This conclusion exaggerates the importance of merely one element of a sentencing decision at the expense of hardships resulting from resentencing.

Of all of the difficult tasks superior courts undertake, sentencing may be among the most challenging. A thoughtful sentencing decision requires trial court judges to balance many conflicting interests. The Sentencing Reform Act[13] sets out seven different considerations:

> The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:
>
> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
>
> (2) Promote respect for the law by providing punishment which is just;
>
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
>
> (4) Protect the public;
>
> (5) Offer the offender an opportunity to improve himself or herself;
>
> (6) Make frugal use of the state's and local governments' resources; and
>
> (7) Reduce the risk of reoffending by offenders in the community.

RCW 9.94A.010.

Not uncommonly, these considerations point sentencing courts in different directions—some toward leniency, others toward stern accountability. Notably, only the first consideration involves the defendant's criminal history, while several others require the trial court to look outside the individual defendant and evaluate instead the future and present impact on the community.

---

[13] Ch. 9.94A RCW.

20

The criminal history of a defendant is obviously critical to a defendant's standard range, and the standard range is, without question, a fundamental component of the sentence. But beyond dictating the scope of the standard range, the actual number of past offenses is but one piece of the holistic picture of a defendant—and this holistic picture is a far more important consideration for the trial judge as they assess the possibility for a defendant "to improve" themselves. RCW 9.94A.010(5).

Meanwhile, the sentencing hearing is also frequently one of the most dramatic and demanding hearings held by the trial court. Lengthy criminal processes exact a toll on the participants of the criminal justice system. And it is not until the sentencing hearing that these participants all have an opportunity for closure. Even when the result is an unhappy one, defendants, victims, and related family members, witnesses, as well as the community as a whole receive a sense of finality at a sentencing hearing.

Of course, the value of this closure, by itself, can never be a barrier to resentencing in the appropriate case. But we should pause with this value in mind as we decide what those appropriate cases are.

Here is where I part with the majority. In the context of a changing offender score, the majority instructs that we should send back every case in which we "cannot know the impact" of a different offender score, even if the range is the same. I would urge a different approach— resentencing should be limited to only those cases where either the standard range changes, or where there is an *overt* indication that the change in an offender score *would* impact the sentencing decision. Examples might include where the trial court gives an indication on the record that either the offender score itself or the specific crime that was removed from the offender score was

unusually impactful, or perhaps where the appeal resulted in a dramatic reduction in the offender score.[14] This case has none of these features.

I respectfully concur in the result.

_____
PRICE, J.

---

[14] One might imagine, for example, a more compelling case for resentencing if an offender score dropped from 20 to 9 as opposed to an offender score dropping from 15 to 12.