[No. 32963.  Department One.  June 2, 1955.]

GERALD MCCLENDON, *Respondent*, v. HARLAN S. CALLAHAN, as *Sheriff of King County, Appellant.*[1]

*Charles O. Carroll* and *Lawrence K. McDonell*, for appellant.

*Koenigsberg & Roberts*, for respondent.

FINLEY, J.—TYPE OF PROCEEDING:

This is a *habeas corpus* proceeding.  It was initiated by a resident citizen of the state of Washington, who is the sub-

[1] Reported in 284 P. (2d) 323.

ject of an application for interstate extradition, instituted by the state of Oregon.

THE FACTS:

On December 13, 1953, Gerald McClendon was driving his automobile on a state highway between Florence and Eugene in Lane county, Oregon. At a point about forty miles from Eugene, a fire occurred in the car. McClendon returned to his home in Seattle, Washington, on December 14, 1953, and on the following day filed a claim with his insurance company for the loss occasioned by the fire. On December 16, 1953, he again went to Lane county, Oregon, for a few days, and then returned to Seattle. Around January 17, 1954, McClendon again visited Lane county, Oregon, for several days, and again returned to his home in Seattle. On February 18, 1954, a complaint was sworn to by Jack J. Winchester, an officer of the Oregon state police, before Chester N. Anderson, judge of the district court for Lane county, Oregon. The complaint charged McClendon with the crime of destroying property (the automobile involved in the fire) with the intent to defraud. A warrant was issued for his arrest, and thereupon, the state of Oregon formally requested extradition of McClendon from the state of Washington. On February 26, 1954, a complaint was sworn to before William S. Hoar, justice of the peace of King county, Washington, charging McClendon as a fugitive from justice relative to the jurisdiction of the state of Oregon. The justice of the peace issued a warrant for McClendon's arrest. He was taken into custody by the sheriff of King county, Washington. The then acting governor of the state of Washington, pursuant to the extradition application of the governor of Oregon, issued a warrant of rendition on March 12, 1954, but service of it was withheld, pending the outcome of a hearing on a petition by McClendon for a writ of *habeas corpus*. After this hearing in the superior court for King county, Washington, on March 15, 1954, Honorable Ward Roney, the trial judge, entered findings of fact and conclusions of law to the effect that the petitioner was not a fugitive from justice within the meaning of Art. IV, § 2, of the United

States constitution; that the complaint, signed by Officer Winchester, did not effectively charge the commission of a crime and, consequently, was insufficient to comply with the procedural requisites of 18 U. S. C., § 3182; that McClendon was being unlawfully and illegally restrained. An order was entered on March 17, 1954, making the writ of *habeas corpus* permanent and directing that McClendon be discharged from custody. This appeal followed.

QUESTIONS TO BE DECIDED:

The appellant's assignments of error raise two significant questions: (1) whether the complaint signed by Officer Winchester of the Oregon state police effectively charged McClendon with the commission of a crime in the state of Oregon; and (2) whether McClendon was a fugitive from justice within the meaning of Art. IV, § 2, of the United States constitution. Stated another way, our problem is to determine whether the extradition papers of the state of Oregon were valid and appropriate to effectuate an extradition of McClendon from the state of Washington.

DISCUSSION OF QUESTION #1:

We shall now discuss the first question set out above, which relates to the complaint signed by Officer Winchester. The complaint reads as follows:

"IN THE DISTRICT COURT OF THE STATE OF OREGON FOR LANE COUNTY

". . .

"The above named defendant, Gerald McClendon is accused by Jack J. Winchester, Oregon State Police by this Complaint of the crime of Destroying Property with Intent to Defraud committed as follows, to-wit: That the said Gerald McClendon on the 13th day of December A.D. 1953, in the County of Lane, State of Oregon, then and there being, did then and there wrongfully, unlawfully and feloniously burn a 1951 "Henry J" sedan automobile, Motor Number K3008986, bearing Washington license number A23-629, by wilfully causing the said automobile to be destroyed by fire near Blachly, in Lane County, Oregon, the said automobile being then and there insured against loss by collision, fire and theft by the Motors Insurance Corporation, an insurance company licensed and doing business in the State of Oregon, with the intent on the part of the said GERALD

McCLENDON then and there to defraud and prejudice the said insurer; contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Oregon.

"Dated this 18th day of February, A.D. 1954, at Eugene, Lane County, Oregon.

"STATE OF OREGON⎰
"COUNTY OF LANE ⎱ ss.

"I, Jack J. Winchester, State Police Officer, being first duly sworn, say that I am the person commencing the within entitled action, and that the complaint therein is true, as I verily believe.                    /s/ Jack J. Winchester

"Subscribed and Sworn to before me this 18th day of February A.D. 1954

"Code Section 23-508 O.C.L.A.

"Chester N. Anderson
"District Judge."

*Respondent contends* that the complaint is defective; that it does not effectively charge the commission of a crime in the state of Oregon, because (1) Officer Winchester did not state facts within his personal knowledge showing a crime had been committed; that, among other things, the phrase, "as I verily believe," was used in the verification of the complaint, indicating that it was not based upon personal knowledge, and (2) that, absent personal knowledge of the facts, Officer Winchester should have set out the sources of the information that led him to believe a crime had been committed. In support of the foregoing contention, respondent cites and principally relies upon: *People ex rel. Cornett v. Warden*, 60 Misc. 525, 112 N. Y. S. 492; *Ex Parte Murray*, 112 S. C. 342, 99 S. E. 798, 5 A. L. R. 1152; *Ex parte Owen*, 10 Okla. Cr. 284, 136 Pac. 197; *Ex parte Spears*, 88 Cal. 640, 26 Pac. 608; *Ex parte Smith*, Fed. Cas. No. 12,968, 3 McLean 121; *Rice v. Ames*, 180 U. S. 371, 45 L. Ed. 577, 21 S. Ct. 406.

*Appellant contends* that the particularity urged by respondent respecting the complaint is not requisite; that any method used and approved by a state for charging the commission of a crime is sufficient. Appellant cites and relies upon: *In re Strauss*, 197 U. S. 324, 49 L. Ed. 774, 25 S. Ct. 535; *Pierce v. Creecy*, 210 U. S. 387, 52 L. Ed. 1113, 28 S. Ct.

714; *Ex parte Nash*, 44 F. (2d) 403; *Ex parte Morgan*, 78 F. Supp. 756; *In re Davis*, 68 Cal. App. (2d) 798, 158 P. (2d) 36; *Ex parte Paulson*, 168 Ore. 457, 124 P. (2d) 297; *State ex rel. Webster v. Moeller*, 191 Minn. 193, 253 N. W. 668; *Biddinger v. Commissioner of Police*, 245 U. S. 128, 62 L. Ed. 193, 38 S. Ct. 41; *In re Anthony*, 198 Wash. 106, 87 P. (2d) 302; *People ex rel. MacSherry v. Enright*, 112 Misc. 568, 184 N.Y.S. 248; *State v. Cronin*, 20 Wash. 512, 56 Pac. 26; *Raftery v. Bligh*, 55 F. (2d) 189.

In *Pierce v. Creecy, supra*, the court said:

"We are unable to adopt the test suggested by counsel, that an objection, good if taken on arrest of judgment, would be sufficient to show that the indictment is not a charge of crime. Not to speak of the uncertainty of such a test, in view of the varying practice in the different States, there is nothing in principle or authority which supports it. Of course, such a test would be utterly inapplicable to cases of a charge of crime by affidavit, which was held to be within the Constitution. *In the Matter of Strauss*, 197 U. S. 324. The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the State from which he has fled."

In *Biddinger v. Commissioner of Police, supra*, the court said:

"The provision of the Federal Constitution quoted, with the change of only two words, first appears in the Articles of Confederation of 1781, where it was used to describe and to continue in effect the practice of the New England Colonies with respect to the extradition of criminals. *Kentucky v. Dennison*, 24 How. 66. The language was not used to express the law of extradition as usually prevailing among independent nations but to provide a summary executive proceeding by the use of which the closely associated States of the Union could promptly aid one another in bringing to trial persons accused of crime by preventing their finding in one State an asylum against the processes of justice of another. *Lascelles v. Georgia*, 148 U. S. 537. Such a provision was necessary to prevent the very general requirement of the state constitutions that persons accused of crime

shall be tried in the county or district in which the crime shall have been committed from becoming a shield for the guilty rather than a defense for the innocent, which it was intended to be. Its design was and is, in effect, to eliminate, for this purpose, the boundaries of States, so that each may reach out and bring to speedy trial offenders against its laws from any part of the land.

"Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose, with the result that one who leaves the demanding state before prosecution is anticipated or begun, or without knowledge on his part that he has violated any law, or who, having committed a crime in one State, returns to his home in another, is nevertheless decided to be a fugitive from justice within their meaning. *Roberts v. Reilly*, 116 U. S. 80; *Appleyard v. Massachusetts*, 203 U. S. 222; *Kingsbury's Case*, 106 Massachusetts, 223.

"Courts have been free to give this meaning to the Constitution and statutes because in delivering up an accused person to the authorities of a sister State they are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution but in the manner provided by the State against the laws of which it is charged that he has offended."

In *People ex rel. MacSherry v. Enright, supra,* cited with approval in *State ex rel. Treseder v. Remann,* 165 Wash. 92, 4 P. (2d) 866, 78 A. L. R. 412, the court said:

"The constitutional provision regarding extradition from one state to another was adopted to promote justice, to aid the states in enforcing their laws, and not to shield malefactors. The Supreme Court of the United States has emphatically announced its adherence to the doctrine that a faithful and vigorous enforcement of the provisions relating to fugitives from justice is vital to the harmony and welfare of the state, and that, while a state should take care that the rights of its people are protected against illegal action, both it and the judicial authorities throughout the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state. The action of the governor in issuing

his warrant should not be nullified by the courts, unless it conclusively appears that the accused is not a fugitive from justice and that the issuance of the warrant was in plain contravention of law."

It appears to us that the better reasoned cases support the contentions of the appellant. We have found no Oregon decision specifying what a complaint must contain and just how it must be drawn to effectively charge the commission of a crime. However, in *State v. Cronin*, 20 Wash. 512, 514, 56 Pac. 26, we said:

"It is contended that this statute requires a positive affirmation that the matter stated in the information is true, and is not satisfied by an oath that it is true as the affiant 'verily believes.' An information is a pleading. It is the formal statement on the part of the state of the facts constituting the offense which the defendant is accused of committing. In other words, it is the plain and concise statement of the facts constituting the cause of action. It bears the same relation to a criminal action that a complaint does to a civil action; and, when verified, *its object is not to satisfy the court or jury that the defendant is guilty, nor is it for the purpose of evidence which is to be weighed and passed upon, but is only to inform the defendant of the precise acts or omissions with which he is accused, the truth of which is to be determined thereafter by direct and positive evidence upon a trial, where the defendant is brought face to face with the witnesses.* The verification to the information, then, can have but one purpose, viz., to insure good faith in instituting the proceedings and to guard against vindictive and groundless prosecutions. No good reason can be assigned why this is not accomplished by an oath reciting that the acts or omissions charged are true as the affiant verily believes, as well as by the oath contended for by the appellant. If the charge is falsely, wilfully and corruptly made, perjury can be predicated upon the one form as well as upon the other. 2 Wharton, Criminal Law (10th ed.), § 1246; Roscoe, Criminal Evidence (8th ed.), *p. 845. And, inasmuch as the statute is silent as to which form of oath should be used, we feel constrained to hold that the required result is accomplished by the form used by the pleader in this instance." (Italics ours.)

In the absence of Oregon authority, we shall assume that the law of that state is the same as ours respecting the

drafting of a complaint to initiate a criminal action. In connection with the matter now under discussion, it is of some interest to note the reasoning in *Raftery v. Bligh, supra,* by Wilson, Circuit Judge, concurring in the result reached by the majority:

"It is perfectly clear that what is meant by the affidavit referred to in section 5278 is an affidavit made for the purpose of instituting proceedings in a state court for the arrest of the accused and the eventual determination of his guilt or innocence of the crime charged in the affidavit, which is complied with by what is commonly termed a complaint under oath.

"The federal question, therefore, involved in section 5278 is whether a charge has been made against the alleged fugitive from justice by indictment, or affidavit before a magistrate, in accordance with the Constitution and laws of the demanding state, and not whether it has been made in accordance with the Fourth or Fifth Amendment to the Federal Constitution, or any federal statute, though the requirements may, in terms, be substantially the same.

"In other words, if a complaint positively sworn to, charging a crime under the laws of the demanding state, in a manner sufficient to warrant an arrest in that state, is sufficient to comply with section 5278, as it clearly appears to be, a state of refuge cannot insist upon additional affidavits setting forth in detail the facts constituting the crime charged as of the actual knowledge of the affiants as a sine qua non of surrendering up a fugitive from justice."

█ We think the complaint signed by Officer Winchester effectively charged the commission of a crime in the state of Oregon.

DISCUSSION OF QUESTION #2—*Whether McClendon is a fugitive from justice*:

█ In its *purported* finding of fact No. VII, the trial court stated, in effect, that McClendon is not a fugitive from justice. Respondent, labeling this action of the trial court as a finding of fact, contends that it must be regarded as establishing the facts of this case, because appellant has failed to assign error properly in compliance with Rule on Appeal 43, as amended, effective January 2, 1953, 34A Wn. (2d) 47. However, we think the so-called finding is a con-

clusion of law, and that the pertinent inquiry is whether such conclusion is supported by the findings and the evidence. In other words, as indicated above, the significant question is whether McClendon is a fugitive from justice. The basic authority for interstate extradition is contained in Art. IV, § 2, of the United States constitution, which provides:

"A person charged in any state with treason, felony, or other crime, *who shall flee from justice, and be found in another state,* shall on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." (Italics ours.)

The constitutional provision for interstate extradition has been implemented through the enactment of legislation by the Congress. 18 U. S. C., § 3182, provides as follows:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, *and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed* treason, felony, *or other crime, certified as authentic by the governor* or chief magistrate of the State or Territory *from whence the person so charged has fled,* the executive authority of the State, District or Territory *to which such person has fled* shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged. (June 25, 1948, ch. 645, § 1, 62 Stat. 822.)" (Italics ours.)

In the case of *In re Roberts*, 186 Wash. 13, 22, 56 P. (2d) 703, this court stated:

"If a party charged with a crime was in the place where the crime was committed, at the time of its commission, and if thereafter he leaves the state, no matter for what reason or under what belief, and even though his departure was with the knowledge, or without objection on the part, of the state authorities, he is nevertheless a fugitive from jus-

tice, within the meaning of the constitution and laws of the United States."

■ In his oral decision and in his purported finding of fact No. VII (which, as indicated above, we think is a conclusion of law), the trial judge stated, in effect, that McClendon was not fleeing from justice, because he returned to Lane county, Oregon, the site of his alleged crime, and stayed there for several days on at least two occasions. We do not agree.

Under the reasoning of the *Roberts* case, *supra*, the test is whether a person (a) is effectively charged with the commission of a crime in the demanding state, (b) whether he was in such state when the crime was committed, and (c) has left that state, and is found in another state. Since we have concluded that McClendon was effectively charged with the commission of a crime in Oregon, and since it is not denied that he was in the state when the crime was committed, has left Oregon, and is now in the state of Washington, it follows that he is a fugitive from justice.

The case must be remanded with directions to quash the writ and to dismiss the *habeas corpus* petition. It is so ordered.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.