[No. 2715–2.   Division Two.   August 23, 1978.]

MOULDEN & SONS, INC., *Respondent,* v. OSAKA
LANDSCAPING & NURSERY, INC.,
*Appellant.*

*John W. Dayhoff,* for appellant.

*Duane S. Radliff,* for respondent.

SOULE, J.—Plaintiff brought an action to recover the unpaid portion of the price of a quantity of cinders delivered to the defendant. Defendant counterclaimed for expenses incurred because the plaintiff initially delivered cinders which failed to meet the size specifications. Plaintiff recovered on its action and defendant's claim was dismissed. Defendant appeals the dismissal of its counterclaim.

In July of 1973, Osaka Landscaping & Nursery, Inc. (defendant), placed an oral order with Moulden & Sons, Inc. (plaintiff), for the delivery of cinders which were to be no larger than 1/4 inch in size. These cinders were to be used in fulfilling a contractual obligation of the defendant, as a subcontractor, to install a playfield for the Mukilteo School District. The cinders were delivered to the work site in August and September of 1973. Defendant spread the cinders and installed the playfield. Following the annual rainy season of 1973–74 and the children's use of the playground, it was discovered that substantial portions of the cinders were larger than the size ordered. This resulted in the children receiving scratches as they played on the cinder playfield. The school district informed the contractor and defendant of this nonconformity. Defendant, in turn, notified plaintiff in September of 1974.[1] Subsequently, by a letter dated November 6, 1974, defendant demanded that plaintiff correct the problem or defendant would do so and charge plaintiff for the expense.

[1] It is not suggested that defendant's notice of revocation of acceptance was untimely.

Plaintiff then made an unsuccessful attempt at sifting out the larger cinders. Finally, in December of that year, plaintiff agreed to replace the cinders at its own expense. However, the parties gave conflicting evidence as to who was to bear the cost of regrading the cinders. Plaintiff contended that defendant had agreed to hire one Fred LaCount to perform this task and assume the cost thereof. Defendant testified that he only suggested that LaCount be hired to do the work, but did not agree to bear the cost of such a hiring. Nevertheless, in January 1975, LaCount performed the bulk of the grading necessary for the reinstallation of the playfield. He apparently returned in the following May to provide some finishing touches. On June 11, LaCount tendered a bill for his services to defendant, who, in turn, deducted this cost (plus the cost of extra labor incurred as a result of the breach) from the amount due to plaintiff on the original contract and tendered payment for the difference to plaintiff on July 30. Plaintiff rejected that tender and this action resulted.

The only issue raised on appeal is whether the trial court correctly denied defendant's counterclaim for the cost of LaCount's regrading plus the extra labor costs incurred due to the plaintiff's breach.[2]

Defendant's counterclaim was denied apparently on the basis that: (1) plaintiff had cured the breach; and (2) the defendant had failed to make a seasonable demand for reimbursement of the expense of reinstalling the playfield. Defendant argues that the plaintiff had no right to "cure" the breach since this was a revocation of acceptance situation, and that its demand for reimbursement was seasonable. We reverse the trial court's denial of defendant's counterclaim for the reasons set out below.

Defendant initially contends that a seller has no right to provide any "cure" in a revocation situation. While such a contention is not without support,[3] there is also authority

---

[2]The trial court's finding that the plaintiff breached the contract by the initial delivery of nonconforming goods has not been contested on appeal.

[3]*Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974); Uniform Commercial Code—

to the contrary.[4] However, under the facts of this case, we need not decide that question. While a seller may not have a right to cure the nonconformity in a revocation situation, the defendant by its letter of November 6, 1974, conferred upon the plaintiff–seller the opportunity to cure the breach. As a result, the primary issue in this case comes down to whether the plaintiff did "cure" the breach as that term is used in RCW 62A.2–508.

The trial court stated as a finding of fact that the plaintiff had cured the breach. The fact that a court designates its determination as a "finding" does not make it so if it is in reality a conclusion of law. Under Washington practice, a conclusion of law mislabeled as a finding will be treated as a conclusion. *McClendon v. Callahan*, 46 Wn.2d 733, 284 P.2d 323 (1955); *Hauser v. Arness*, 44 Wn.2d 358, 267 P.2d 691 (1954); 2 Orland, Wash. Prac. § 311, at 338 n.38 (1972).

In *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974), a finding of fact was defined as an

> assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect.'"

In applying that definition to the facts at hand, it is clear that whether the plaintiff had provided new cinders would be a finding of fact. However, whether the replacement of the cinders constituted a "cure" is a determination of the legal effect of that action and is thus a conclusion of law.[5] Therefore, the pertinent standard of review is whether the conclusion of law, that a cure resulted, is supported by the evidence. *McClendon v. Callahan, supra.*

---

*Sales*—§§ 2–508 and 2–608—*Limitations on the Perfect–Tender Rule,* 69 Mich. L. Rev. 130, at 147 n.81–83 (1970–71).

[4]Note, *Commercial Law—The Effect of the Seller's Right to Cure on the Buyer's Remedy of Rescission,* 28 Ark. L. Rev. 297, 300–01 (1974); J. White & R. Summers, *Uniform Commercial Code* 260–61 (1972).

[5]If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact, but if a determination

■ Since the Uniform Commercial Code does not define the term "cure," resort must be made to other case law and the policy of the code's remedy provisions. A case which concerned substantially similar issues as the one at hand was *Great American Music Mach., Inc. v. Mid–South Record Pressing Co.*, 393 F. Supp. 877, 882 (M.D. Tenn. 1975). In that case, the defendant was under contract to manufacture and supply to the plaintiff a large quantity of record albums. When the albums were received, an inspection revealed substantial defects. Defendant agreed to replace the albums with a new pressing. Plaintiff accepted this replacement delivery and brought suit for, among other things, the incidental expense of the extra handling costs attributable to the defective first pressing. The court allowed recovery of these expenses, finding that the mere

> delivery of the second batch of records did not constitute a cure within the meaning of . . . [RCW 62A.2–508] . . . as the damage had already occurred and the time set for performance had expired.

In the case before us, once the initial delivery was found to be nonconforming, the buyer had incurred the damage of the inevitable cost of regrading the replacement cinders and unless that damage was remedied as well as the goods replaced, the buyer would not be put into the same position as if no breach had occurred, thus no cure could result.

This analysis is in line with the policy of the code of providing remedies which place the nonbreaching party in the same position he would have occupied had no breach occurred. RCW 62A.1–106. Were we to disallow the grading costs as not being a necessary part of a cure, the policy of the code would be frustrated. Furthermore, the result would be inconsistent with other, similar situations in which the buyer has the right to recover such incidental damages, *i.e.,* where he has revoked his acceptance and

---

is made by a process of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law. *Poyner v. Lear Siegler, Inc.*, 542 F.2d 955 (6th Cir. 1976).

"covered" by purchasing the goods from a third party, RCW 62A.2–711(1)(a), 62A.2–712(2), or where he has revoked his acceptance and did not obtain cover. *Lanners v. Whitney,* 247 Ore. 223, 428 P.2d 398 (1967); *Grandi v. LeSage,* 74 N.M. 799, 399 P.2d 285 (1965); RCW 62A.2–711, 62A.2–713.

Since we have found that defendant's claim was not barred by an effective cure, we must examine the alternative basis for the denial of defendant's counterclaim, *i.e.,* defendant's failure to make a seasonable demand for reimbursement. This court has been unable to find upon what legal basis the trial court found that a seasonable demand for reimbursement was necessary *in addition to* the September notice of revocation of acceptance. The code only requires that a buyer, in revoking an acceptance, give notice of the breach to the seller which notice states that the buyer is not accepting the goods. RCW 62A.2–607(3); RCW 62A.2–608(2); and *Allis–Chalmers Corp. v. Sygitowicz,* 18 Wn. App. 658, 571 P.2d 224 (1977). There is no requirement that the buyer must provide a continual update of the damages which he has incurred before he will be entitled to recovery. *See* RCW 62A.2–711, 62A.2–712.

We therefore hold: (1) the trial court erred in concluding that the tender of the replacement cinders, without any reimbursement for the incidental expenses caused by the breach, was an effective cure; and (2) the trial court erred in imposing a duty upon the buyer to make a separate, seasonable demand for reimbursement of the regrading expense. The trial court's denial of defendant's counterclaim is reversed.[6]

---

[6]As noted above, the bases for the trial court's denial of defendant's counterclaim were that an effective cure had been accomplished and that the defendant had failed to make a seasonable demand for reimbursement. Respondent's contention that LaCount was to be paid by appellant because an accord and satisfaction resulted from the December meeting must fail since it is presumed that, where a court fails to make a finding of accord and satisfaction, it found against the party who bore the burden of proof in that regard, *i.e.,* plaintiff. *Rhodes v. Gould,* 19 Wn. App. 437, 576 P.2d 914 (1978).

This cause is remanded for entry of judgment in accordance with this opinion.

REED, A.C.J., and PETRIE, J., concur.