**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**APRIL 4, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| OTHELO QUILANG, | ) | No.    38283-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING MOTION |
| | ) | TO PUBLISH OPINION |
| STATE OF WASHINGTON | ) | |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |

THE COURT has considered the Appellant's motion to publish the court's opinion of December 8, 2022, and the record and file herein, and is of the opinion the motion should be granted. Therefore,

IT IS ORDERED, the motion to publish is granted. The opinion filed by the court on December 8, 2022, shall be modified on page 1 to designate it is a published opinion and on page 23 by deletion of the following language:

> A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

PANEL: Judges Siddoway, Pennell, Staab

FOR THE COURT:

_____
GEORGE B. FEARING
Chief Judge

**FILED**
**DECEMBER 8, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| OTHELO QUILANG, | ) | |
| | ) | No. 38283-4-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — Othelo Quilang appeals an order of the Department of Social

and Health Services (Department) finding that he physically abused a resident at a care

facility where he was formerly employed. Mr. Quilang persuaded an administrative law

judge (ALJ) that the Department had not proved the charge, but the ALJ's favorable

initial order was reversed by the Department's Board of Appeals (Board). Mr. Quilang

sought judicial review by the superior court, which affirmed the Board.

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

Of the 11 assignments of error made by Mr. Quilang, we find 2 related misapplications of law: the review judge misapplied a presumption of harm as a presumption of abuse and, having presumed abuse, failed to make certain necessary findings. We agree with the Department that the appropriate remedy is to remand to the Board with directions to redecide the appeal consistent with the law as set forth in this opinion.

FACTS AND PROCEDURAL BACKGROUND

Othelo Quilang is a registered nursing assistant and formerly worked as a caregiver at an adult family home (AFH, or home) where his primary assignment was to care for a single patient, Judy.[1] Judy is blind, developmentally disabled, suffers from a profound intellectual disability, and is nonverbal. She requires staff assistance with her liquid diet and is incontinent. At the time of the alleged abuse, she was 61 years old, 4 foot 10 inches tall, and weighed 91 pounds.

Judy's AFH assessments regularly noted that she had a history of self-abuse or self-injurious behavior that included head banging and elbow banging. She had sustained head trauma from this behavior in the past, including one occasion when she was taken to an emergency room and required 15 staples to her forehead. Her assessments surmised that Judy's self-injurious behavior was triggered by "anxiety, pain, boredom or noise,"

---

[1] Like the parties, we refer to the alleged victim by her first name only, to protect her confidentiality.

2

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

and elsewhere, that it was usually caused by "a person, an outing, or too much noise or pain." Clerk's Papers (CP) at 352-53 (boldface omitted).

Judy's assessments stated that she required line of sight support (no farther than arm's length) to protect her from dropping herself to the floor. Floor mats were to surround her and to be placed on both sides of her bed. Foam "noodles" of the sort used in pools as floatation devices and toys were also used as protective cushioning. They had been placed on almost everything Judy used, including the bars in her bath or shower, on the foot and head of her bed, and on the metal bars attached to the side of her bed.

On March 29, 2019, one of Mr. Quilang's coworkers, Amber Wicks, passed by Judy's room and believed she saw Mr. Quilang hit Judy with a foam pool noodle. The Board's review judge later cited Ms. Wick's statement in the home's incident report:

> I was walking by Judy's room and out of the corner of my eye I thought I saw Othello [sic] hit Judy with the pool noodle. Another client needed to use the restroom so I helped him then came back and grabbed my phone, when I thought I saw it again. At that point I saw him lean over to see if anyone was watching. I pretended to look clueless. I pulled out my phone and hit record on my camera. While talking to another coworker I captured Othello [sic] repeatedly hitting Judy, a few times were in the face. After I stopped recording I immediately called on call to figure out where to go from there.

CP at 185. Ms. Wicks perceived Mr. Quilang to have struck Judy in the face six or more times during the time she was recording.

An assistant manager at the home reported the incident as an assault of a resident to the Whitman County Sheriff's Office that day. The responding officer spoke with the

3

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

assistant manager, Ms. Wicks, and Mr. Quilang. The assistant manager told the officer that "they were all surprised" by Mr. Quilang's behavior, as he had been a good employee, but the home had a no-tolerance policy and Mr. Quilang's employment had been terminated. CP at 356. The officer reviewed Ms. Wick's cellphone recording and described it in a report as showing Mr. Quilang "hit [Judy] in the head area about eight times," with Judy appearing to be "surprised or possibly in pain." CP at 181. The officer also stated that Judy "screamed after a few of the strikes." *Id.* The report was forwarded to the prosecutor who declined to charge Mr. Quilang "based on defendant's age[2] and fact that he had been fired." CP at 184 (some capitalization omitted).

Adult Protective Services (APS) found that Mr. Quilang's actions constituted physical abuse of a vulnerable adult. He contested the finding, explaining in his request for a hearing, "It was not my intention to do harm." CP at 120. His appeal was heard by ALJ Robert Boggs.

At the hearing, the Department called as witnesses Mr. Quilang, Ms. Wicks, and Janiece Murphy, the APS employee assigned to investigate the allegation of abuse. An interpreter was present and interpreted for Mr. Quilang, whose request for hearing stated he needed an interpreter in the Filipino Visaya language.[3]

---

[2] Mr. Quilang was then 72 years old.

[3] Mr. Quilang implies in his briefing that he was denied needed interpretation services during the investigation, but he has not assigned or preserved error on that point.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

Among the exhibits offered at the hearing was a compact disk (CD) containing a copy of Ms. Wick's cellphone recording. Defense counsel objected to the exhibit on "best evidence" grounds, arguing that it was a "recording of a recording," and unlike the original cellphone recording, it contained no audio. CP at 264.

The Department's lawyer sought to lay a foundation for the CD through Ms. Wicks and Ms. Murphy. Ms. Wicks testified that she "messaged" a copy of her cellphone recording to her assistant manager, Katie Swan, and Ms. Murphy testified that she received a copy of the recording from Ms. Swan, who sent it to Ms. Murphy's phone. CP at 296. Ms. Murphy testified that upon receiving it, she had an employee at APS help her upload it to the CD that the State was offering as its exhibit 16. Defense counsel continued to object on best evidence grounds, but ALJ Boggs overruled the objection, stating that the missing audio "cuts both ways. That harms the state's case also." CP at 318.

In cross-examination, Ms. Wicks acknowledged that employees at the home called Mr. Quilang "the Judy whisperer," and explained why:

---

Ms. Murphy testified at the hearing that Mr. Quilang was advised orally and in writing that he could request an interpreter when interviewed by her, but he declined. Mr. Quilang testified he had requested an interpreter when he was interviewed by Ms. Murphy, but none was provided.

Presumably, Mr. Quilang's point is that the fact finders, and we, should give him the benefit of the doubt if his statements during proceedings below inarticulately conveyed his defense.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

> [H]e only worked with Judy and we only ever saw good things from him. He always sang to her and read to her. And for the most part, she was calm. And he would, you know, like I said, tell her how the weather was outside. And that's the only reason I recorded it, because I didn't even believe what I was seeing, much less anybody else believing me.

CP at 301.

ALJ Boggs reversed the Department's finding that Mr. Quilang had physically abused Judy. His critical finding 4.6 stated that Mr. Quilang "did not intend to harm Judy. His actions were ill advised and negligent for dealing with someone like Judy but were not intended to harm Judy. He did not believe he was injuring Judy." CP at 76. He explained this in preceding findings:

> 4.2    The Appellant, Othelo Quilang . . . had taken care of Judy since 2013. His entire 8 hour shift was just taking care of Judy. He had a great reputation at the facility for being able to keep Judy calm. The other employees called him the "Judy whisperer". The Appellant was not clear on what if any training he had received for dealing with [Developmental Disabilities Administration] clients. He was not familiar with Judy's care plan. No evidence was presented as to what training he did have.

CP at 75. ALJ Boggs found that while Amber Wicks saw what she described as Mr. Quilang hitting Judy with the pool noodle and began surreptitiously videotaping him:

> 4.4    The Appellant maintains that he was not hitting Judy. He stated that she was trying to bang her elbows against the arms of her recliner. When she raised her arm he would try to stick the pool noodle under her arm. The pool noodle was approximately 4 feet long. He would be holding one end of the pool noodle with the pool noodle pointing at an upward angle then and bring the other end of the [pool noodle] down to try to place it under her elbow. He said that at times her

6

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

> arms would catch the pool noodle before it got under her arms forcing the noodle up towards her face.

> 4.5    In the video one can see that he would bring the pool noodle down when Judy was raising her arm up to in preparation for bringing her elbow down on the arm rests.  At times it did not look like she was bringing her arm up.  At times it would look like he was "hitting" her with the pool noodle.  However, besides saying that he was hitting her one could say the actions looked more like taps.  That is in order to actually physically hurt someone with the noodle one would have to use a lot of force as they are very soft.  He does not appear to be using a lot of force and could be said to be tapping her with the pool noodle.  In part the video supports his story as most of the "taps" seem to be related to her bringing her arm up.  The video also looks like he may have tapped her to get her attention or disrupt her behavior.

CP at 75-76.  The ALJ concluded that the Department did not meet its burden of proving that Mr. Quilang abused a vulnerable adult.

The Department petitioned for review by its Board of Appeals.  In a 24-page review decision and final order, the Board's review judge provided his own description of what can be seen in the video, and found that Mr. Quilang's "claim to acting to protect Judy was not credible."  CP at 357.  In explaining his rejection of the ALJ's finding that Mr. Quilang did not intend to harm Judy and did not believe he was injuring her, the review judge reasoned:

> [T]he statute mandates that the abuse here is presumed.  **"In instances of abuse of a vulnerable adult *who is unable to express or demonstrate physical harm, pain, or mental anguish, <u>the abuse is presumed</u> to cause physical harm, pain, or mental anguish.***"  Appellant's *Response* here mentions, but dismisses this statutory 'presumption,' failing to show the presumption inapplicable or rebuttable.  The *Initial Order* neither quoted, cited, nor discussed this presumption, which led to an erroneous result.  The

7

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

> record is replete with proof that Judy was "unable to express or demonstrate physical harm, pain, or mental anguish," and the presumption of injury, pain, or mental anguish is thus applicable and not rebuttable. Therefore, under the plain language of bodily injury or physical mistreatment, the Department proved the second element of physical abuse.

CP at 365-66. Mr. Quilang appeals.

## ANALYSIS

Under the Abuse of Vulnerable Adults Act, chapter 74.34 RCW (the Act), the Department receives reports of abuse of vulnerable adults and provides protective services. RCW 74.34.005(5), (6). Mr. Quilang has never disputed that Judy is a "vulnerable adult," which is defined to include a person 60 years of age or older who has the functional, mental, or physical inability to care for herself. RCW 74.34.020(21).

"Abuse" was defined at the time of Mr. Quilang's alleged offense as "the willful action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult." Former RCW 74.34.020(2) (2018). "Willful" has been defined by case law to mean that the alleged perpetrator "knowingly inflict[s] injury, unreasonable confinement, intimidation or punishment." *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 551, 389 P.3d 731, *review denied*, 188 Wn.2d 1009, 394 P.3d 1016 (2017).[4]

---

[4] In repealing and recodifying WAC 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 through 388-71-01281 at chapter 388-103 WAC, the Department modified the definition of "willful" in response to *Crosswhite*. WSR 21-06-109, *and see* WAC 388-103-0001(1). As explained in the notice of the rule change proposal, the purpose "is to adapt and respond to the *Crosswhite*

8

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

The Department is authorized by the Act to adopt rules relating to the reporting, investigation, and provision of protective services in in-home settings. RCW 74.34.165. The Department makes an "initial substantiated finding of abuse" when it determines that, "more likely than not, the alleged . . . abuse . . . occurred." WAC 388-103-0001(9). The alleged perpetrator can appeal an initial substantiated finding of abuse to the Office of Administrative Hearings, and either party can appeal the ALJ's initial order to the Board. WAC 388-103-100, -140, -150. An individual who, like Mr. Quilang, has a final finding of abuse of a vulnerable adult is prohibited from practicing a health care profession in Washington State. RCW 18.130.400.

<u>Judicial Review of Agency Final Orders</u>

A petition for judicial review of an agency's final order is governed by Washington's Administrative Procedure Act (APA), chapter 34.05 RCW. We will grant relief from an agency order in the circumstances identified by RCW 34.05.570(3), and Mr. Quilang primarily relies on two: that the review judge erroneously interpreted or applied the law, and that the final order is not supported by evidence that is substantial when viewed in light of the whole record before the court. RCW 34.05.570(3)(d) and (e). Mr. Quilang makes subsidiary challenges of constitutional error and that the order is arbitrary and capricious, in violation of RCW 34.05.570(3)(a) and (i).

decision where a previous APS WAC definition was found to exceed the agency's statutory authority. The anticipated effect of this proposal is to adapt the commonly understood meaning of 'willful' observed in *Crosswhite*." WSR 21-06-109.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

We review the review judge's final order from the same position as the superior

court, and review the administrative record rather than the superior court's findings or

conclusions. *Crosswhite*, 197 Wn. App. at 548. Findings of fact from the agency's final

order are reviewed under the substantial evidence test and will be upheld if supported by

a sufficient quantity of evidence to persuade a fair-minded person of the order's truth or

correctness. *Id.* (citing *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 817, 306

P.3d 920 (2013)).

Where the ALJ and the review judge enter contradictory findings, we do not

accord the deference to the ALJ that we would accord to the trier of fact in a

nonadministrative matter, because the review judge has broad decision-making authority

and is intended to bring the agency's expertise to bear. The review judge may commit an

error of law if he or she fails to give due regard to findings of the ALJ that are informed

by the ALJ's ability to observe the witnesses, however. *Id.*

Mr. Quilang bears the burden of showing invalid action. RCW 34.05.570(1)(a).

Relief is available only if he shows he was substantially prejudiced by the action

complained of. RCW 34.05.570(1)(d).

I. ALLEGED EVIDENTIARY ERROR AND MISAPPLICATION OF LAW

Mr. Quilang contends the review judge erred in (A) relying on the CD version of

Ms. Wick's video recording admitted by the ALJ, (B) misapplying the presumption of

10

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

harm as a presumption of willful abuse, and (C) failing to give the required deference to

the ALJ's ability to assess credibility.

> A. A Privacy Act challenge to the video was not preserved, and it was not an abuse of discretion to overrule Mr. Quilang's objection on "best evidence" grounds

Mr. Quilang objected to the Department's offer of exhibit 16, the CD version of

Ms. Wick's video recording, on "best evidence" grounds. For the first time on appeal, he

also argues that admission of Ms. Wick's recording would violate Washington's Privacy

Act, and specifically, RCW 9.73.030(1)(b), which makes it unlawful to record any

"[p]rivate conversation . . . without first obtaining the consent of all the persons engaged

in the conversation."

The Department defends against the new Privacy Act objection on the basis that

any "conversation" captured by the original recording would not have been "private"

because it took place at Mr. Quilang's workplace, an adult family home with an open

floor plan. It argues that the open door to Judy's room permitted Ms. Wicks and other

employees to see and hear what was going on inside. It also points out that the Privacy

Act challenge is being raised for the first time on appeal.

Mr. Quilang defends his failure to object on Privacy Act grounds at the hearing by

arguing that since the CD did not contain audio, "it would not meet the

communication/conversation element of the Privacy Act." Appellant's Reply Br. at 21.

We decline to review the unpreserved Privacy Act challenge. *See* RAP 2.5(a).

11

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

As for the "best evidence" objection that *was* made below, ER 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original . . . is required, except as otherwise provided" by another controlling rule or statute. A video tape or video recording qualifies as a photograph for the purposes of the rule. ER 1001(b). ER 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

In administrative proceedings, "[e]vidence . . . is admissible if in the judgment of the presiding officer it is the kind of evidence on which reasonably prudent persons are accustomed to rely in the conduct of their affairs." RCW 34.05.452(1). "Findings may be based on such evidence even if it would be inadmissible in a civil trial." RCW 34.05.461(4). Nevertheless, if not inconsistent with RCW 34.05.452(1), "the presiding officer shall refer to the Washington Rules of Evidence as guidelines for evidentiary rulings." RCW 34.05.452(2). "Documentary evidence may be received in the form of copies or excerpts." RCW 34.05.452(4). We review a presiding officer's evidentiary rulings for abuse of discretion. *Univ. of Wash. Med. Ctr. v. Dep't of Health*, 164 Wn.2d 95, 104, 187 P.3d 243 (2008).

Mr. Quilang argues only that the CD was not the original and is lacking the audio and a date recorded in the original. He offers literally no argument why the CD would not be admissible under ER 1003 and RCW 34.05.452. No abuse of discretion is shown.

12

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

       B.      The review judge misapplied the presumption of injury as a presumption of abuse

A health care professional's negligent action or inaction that causes injury can have other consequences, but the legislature has never treated a merely negligent infliction of injury on a vulnerable adult as "abuse" under the Act. *E.g.*, *Crosswhite*, 197 Wn. App. at 554-55. Instead, "abuse" now requires at least "reckless" action,[5] and at the time of Mr. Quilang's conduct required that he *knowingly* inflict one of the statutory harms: injury, unreasonable confinement, intimidation, or punishment. *Id.* at 551. This followed from the statute's definition of "abuse" as meaning "willful" action or inaction that inflicts one of the harms.

The review judge viewed the required proof of "abuse" as satisfied in this case by a statutory presumption appearing in RCW 74.34.020(2), together with the definition of "physical abuse" found in RCW 74.34.020(2)(b). RCW 74.34.020(2) provides in part that "[i]n instances of abuse of a vulnerable adult who is unable to express or demonstrate physical harm, pain, or mental anguish, the abuse is presumed to cause physical harm, pain, or mental anguish." Before being amended in 2021 to address intentional and reckless abuse, former RCW 74.34.020(2)(b) provided:

---

[5] A legislative change in 2021 extended the meaning of "abuse" to "reckless" action or inaction, in addition to distinguishing "intentional" and "willful" actions as a basis for "abuse." LAWS OF 2021, ch. 215, § 162 (codified at RCW 74.34.020(2)).

13

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

> "Physical abuse" means the willful action of inflicting bodily injury or physical mistreatment. Physical abuse includes, but is not limited to, striking with or without an object, slapping, pinching, choking, kicking, shoving, or prodding.

From the presumption language and the definition of "physical abuse," the review judge essentially inferred a syllogism:

- Judy is unable to express or demonstrate physical harm, pain, or mental anguish;
- She was struck with an object;
- Therefore, the Department proved "physical abuse" by "striking with . . . an object."

*See* CP at 365-66. Mr. Quilang argues that this is a misapplication of the statute or, if not, then either the statute creates an unconstitutional presumption that deprives him of due process, or its application by the review judge was arbitrary and capricious.

Our fundamental objective in interpreting a statute is "to ascertain and carry out the Legislature's intent." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). "[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." *Id.* at 9-10. "'Statutes must be interpreted and construed so that all the language used is given effect with no portion rendered meaningless or superfluous.'" *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (quoting *State v. J.B.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

The presumption provision relied on by the review judge applies to only those vulnerable adults who are incapable of expressing or demonstrating physical harm, pain, or mental anguish. It deals by its plain language only with a presumption of *injury*. Assuming that the Department's evidence otherwise proves that an act of abuse has been committed, it states that for these noncommunicative adults, "the abuse is presumed to cause physical harm, pain, or mental anguish." RCW 74.34.020(2).

Turning to the definitional provision relied on by the review judge, one of its sentences states that "[p]hysical abuse includes . . . striking with . . . an object." RCW 74.34.020(2)(b). Contrary to the review judge's reading, this standalone sentence cannot be read to mean that physical abuse includes *nonwillful* striking with an object. Such a reading would ignore the preceding language of the subsection that "'Physical abuse' means the . . . *willful* . . . *action* of inflicting bodily injury or physical mistreatment" and would ignore the definition of "abuse" itself, which requires "*willful . . . action or inaction*." Giving meaning to all of the language of RCW 74.34.020, the presumption allows injury to be presumed in the case of a noncommunicative adult, but it does not allow *willfulness* (either knowing action, or knowing that it will cause injury) to be presumed.

The ALJ found that Mr. Quilang knowingly hit or, in the ALJ's view, more accurately "tapped" Judy with the pool noodle. CP at 75. He found that Mr. Quilang's actions were "ill advised and negligent" but also found—reviewing the video with Mr.

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

Quilang's testimony and history in mind—that Mr. Quilang's knowing action was committed without knowing that it would cause injury. *Id.* While a review judge could disagree, this was a valid distinction under the applicable laws and regulations. The review judge misapplied the law when he treated the presumption of injury as a presumption of abuse.

The review judge made an unchallenged finding that Mr. Quilang's act of striking Judy with the pool noodle was knowing. *See* CP at 368, Finding 17 ("Appellant at times could be interpreted as claiming his striking or hitting Judy was 'accidental,'" "nothing in the evidence other than Appellant's claim supported a conclusion that . . . [it] was accidental," and, "The video shows the hitting was quite deliberate."). His findings on whether Judy is unable to express or demonstrate physical harm, pain, or mental anguish are contradictory, but as discussed below, they still support a finding of injury. Because of the misapplication of the presumption of harm, however, the review judge failed to make findings on whether Mr. Quilang knowingly inflicted injury. Remand is required.

C. Because he viewed the presumption as dispositive of the issue of "abuse," the review judge's findings inadequately address whether Mr. Quilang knowingly inflicted injury, and inadequately explained any disagreement with the ALJ on that score

Mr. Quilang also contends that the review judge misapplied the law by failing to explain his basis for departing from the ALJ's finding that Mr. Quilang did not intend to harm Judy or believe that he was injuring her.

16

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

RCW 34.05.464(4) provides that the reviewing officer "shall exercise all the decision-making power that the reviewing officer would have had to decide and enter the final order had [he] presided over the hearing." In reviewing findings of fact by presiding officers, however, the statute provides that "the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses." *Id.* And when an agency departs from ALJ findings, especially on "primary" inferences involving a determination of whether a witness's testimony as to an alleged fact is true, the agency must explain why. *Crosswhite*, 197 Wn. App. at 561 (citing *ITT Cont'l Baking Co. v. Fed. Trade Comm'n*, 532 F.2d 207, 219 (2d Cir. 1976); *Gen. Dynamics Corp. v. Occupational Safety & Health Rev. Comm'n*, 599 F.2d 453, 463 (1st Cir. 1979); *Int'l Brotherhood of Teamsters v. Nat'l Lab. Rels. Bd.*, 587 F.2d 1176, 1181 (D.C. Cir. 1978)).

The ALJ's critical ultimate findings were that Mr. Quilang "did not intend to harm Judy" and "did not believe he was injuring Judy." CP at 76. While the review judge states that he "has given due regard to the ALJ's opportunity to observe the witnesses," CP at 360, he offers no explanation why he has departed from the ALJ's primary inferences. If, on remand, he persists in departing from the ALJ's primary inferences, case law requires him to explain why.

17

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

II.     EVIDENCE SUFFICIENCY

While we are remanding in light of the legal errors, Mr. Quilang is entitled to have us try to review his evidence sufficiency challenge, since a demonstration that the evidence is insufficient would require reversal and dismissal.

The review judge's legal errors make that impossible in the case of evidence bearing on whether Mr. Quilang knowingly inflicted injury. The review judge's belief that the presumption was controlling meant that he did not enter relevant findings. Mr. Quilang relies on *Crosswhite* to argue that we can and should apply a "searching review" and decide his evidence sufficiency challenge in his favor.[6] But we could do that in *Crosswhite* because, as we emphasized in that case, the review judge and the ALJ made findings on facts relevant to the law as properly applied. 197 Wn. App. at 559. Here, the review judge did not. He needs to be given that opportunity on remand. We will review the evidence sufficiency challenge to the extent we can.

Mr. Quilang's opening brief assigns error to seven findings by the review judge, but his brief fails to identify the basis of his challenge to two of them: findings 9 and 16. When a party fails to present argument about a challenged finding, we need not consider the assignment of error. *State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 14, 436 P.3d

---

[6] Where the reviewing officer's findings contradict the ALJ's, we apply a more searching review to determine whether the deviation was supported by substantial evidence and whether the reviewing judge gave due regard to the ALJ's opportunity to observe the witnesses. *Woldemicael v. Dep't of Soc. & Health Servs.*, 19 Wn. App. 2d 178, 184, 494 P.3d 1100 (2021) (citing *Crosswhite*, 197 Wn. App. at 560).

18

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

857 (2019). Assignments of error not discussed in a party's brief are deemed abandoned.

*Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 780 n.11, 436 P.3d 397

(2019).

Of the five challenged findings that remain, two are labeled by the final order as

conclusions of law. As Mr. Quilang correctly notes, if a proposition whose substance is a

finding of fact is mislabeled as a conclusion of law, we will review it for what it is,

ignoring the label.[7] We turn to the five findings that Mr. Quilang addresses with

argument in his brief.

Finding of Fact 5:

The assessment from April 1, 2019, distinct from the 2018 assessment, stated on its first page, in its first paragraph as follows: "Due to Judy being blind and non-verbal she is at high risk for abuse." CP at 354 (emphasis omitted).

Mr. Quilang argues at page 59 of his brief that it is unlikely Mr. Quilang had prior

knowledge of the quoted language from the April 1, 2019 assessment because it did not

exist on March 29, 2019, the date of his alleged abuse. He objected to the admission of

the 2019 assessment on this basis at the hearing, and the ALJ noted the timing but

admitted the 2019 assessment as "close in time." CP at 264. As asserted by the finding,

---

[7] "If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact." *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 197 n.5, 584 P.2d 968 (1978). However, "if a determination is made by a process of legal reasoning from, or of interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law." *Id.* at 197 n.5.

19

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

the quoted language did not appear in Judy's 2018 functional assessment, which is otherwise nearly identical. *Compare* CP at 191, 214. The finding accurately quotes the assessment and accurately distinguishes it from the 2018 assessment.

Mr. Quilang contests the relevance of the 2019 assessment, but substantial evidence supports the finding. And another document in Judy's file, which had been revised on November 1, 2018, also stated, "Judy is at high risk for verbal and physical abuse." CP at 199 (Ex. 12; entitled "Risks!").

> Finding of Fact 12:
>
> . . . [Mr. Quilang] testified he was using the pool noodle to "support [Judy's] elbow" and to keep her from injuring herself and that he had no intention to injure Judy. *This claim to acting to protect Judy was not credible.* CP at 357 (emphasis added) (footnote omitted).

Mr. Quilang's only challenge to finding of fact 12 appears at pages 56 and 60 of his opening brief. He argues that the review judge made the finding that Mr. Quilang was not credible "without explanation" of his deviation from the ALJ's findings, based on flawed reasoning that because the presumption of *injury* was satisfied no explanation was required. Appellant's Opening Br. at 60.

We have already concluded that the review judge erred in relying on the presumption of harm to find willful abuse, and in failing to explain why he rejected the ALJ's findings that Mr. Quilang credibly denied an intent to inflict harm. But those are legal errors that warrant a remand. Mr. Quilang does not demonstrate that no evidence in

20

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

the record could possibly support a finding that his claim that he was acting to protect

Judy was not credible. Evidence insufficiency is not shown.

<u>Allegedly mislabeled finding of fact in Conclusion of Law 12:</u>

[*T*]*he video of Appellant striking* [*Judy*] *with the pool noodle showed indisputably that she was not happy with how she was being treated*; and

*The record is replete with proof that Judy was "unable to express or demonstrate physical harm, pain, or mental anguish . . . ."* CP at 365-66.

Mr. Quilang argues that the statement that the record is replete with proof that

Judy "is unable to express or demonstrate physical harm, pain, or mental anguish"

conflicts with the review judge's finding 3 that the home's "communication lexicon" for

Judy identifies how she communicates "no," "pain," and "impatience." Appellant's

Opening Br. at 24, 64. The communication lexicon states that Judy communicates "no"

by nodding her head, arching her back, swinging her arms, crying out and kicking,

banging her head or her elbow, or dropping to the floor. CP at 196. She communicates

pain by head banging and sometimes crying. *Id.* She communicates impatience by

banging her head or elbow. *Id.*

Mr. Quilang also contrasts the review judge's finding that Judy is unable to

express or demonstrate harm, pain, or anguish with the statement in the same finding that

the video "showed indisputably that she was not happy with how she is being treated."

CP at 365. Elsewhere, the review judge found that the video shows Judy repeatedly

raising her hand "in an apparent effort to protect herself," ending "with her head back,

21

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

and mouth open, in what appears to be anguish." CP at 356-57. And the review judge found that both Ms. Wicks and the responding deputy sheriff who reviewed her cellphone recording testified that Judy had been screaming and yelling, in surprise, agitation, and possibly pain. CP at 356-58. We agree that these findings present contradictions.

This is an anomalous assignment of error, because to challenge the finding that Judy is *unable* to express or demonstrate suffering, Mr. Quilang points to evidence found by the review judge from which one could infer that Judy *was* suffering. Arguably, the inconsistencies show that the evidence could support either a finding of harm, or a finding of Judy's inability to express harm and thereby presumed harm. Either way, the evidence would be sufficient to meet the Department's burden to prove the necessary element of injury.

<u>Allegedly mislabeled finding of fact in Conclusion of Law 13:</u>
"[Mr. Quilang's] claim that [hitting Judy with the pool noodle] was accidental is not credible." CP at 49.

Mr. Quilang assigns error to this finding as failing to explain its deviation from the ALJ's findings that Mr. Quilang did not intend to harm Judy and did not believe he was injuring her. Appellant's Opening Br. at 56. Here again, because the legal error warrants a remand and Mr. Quilang is unable to show that no evidence in the record could possibly support this finding, evidence insufficiency is not shown.

22

No. 38283-4-III
*Quilang v. Dep't of Soc. & Health Servs.*

We vacate the review decision and final order and remand for further proceedings

consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____        _____
Pennell, J.                            Staab, J.

23